May it please the court, good afternoon, your honors. Anthony Cannon on behalf of the appellant, Dr. and Mrs. Milhouse. I would like to reserve four minutes for rebuttal if it would be okay with the court. May I proceed? Go ahead. Dr. and Mrs. Milhouse were victims of a wildfire in 2008 and the briefing is fairly extensive on the trial. I would like to comment on three areas that we believe entitled Dr. and Mrs. Milhouse to a new trial on their tort cause of action for bad faith. Essentially the first issue would be the IRS issue addressed in the brief. That being an issue of law not decided by the district court on either summary judgment or the giving of a jury instruction on clear law that would enable the jury to understand whether or not travelers inclusion of the IRS on their policy benefits was either retaliatory or legally required. The district court correctly found after trial and held in his ruling that the inclusion of the IRS was not mandatory and that the IRS was not entitled to be named on the check. Unfortunately the jury was deprived of evidence on this issue other than improper evidence from lawyer testifying witnesses produced by travelers. These lawyers testified contrary to the law that the district court properly determined later. And travelers counsel was able to argue to the jury that the only evidence they had of the propriety of naming the IRS was the testimony from the witness stand and not the argument of counsel. One of your claims though was that they for bad faith conduct on the part of travelers was that they named the IRS. Right. So something had to come in about that. It was certainly correct. Yes, Your Honor. I agree with you. So your your objection is is that he didn't give an instruction. Is that what is that what the heart of your argument is. It's that and that the jury was misled because they did not. The court did allow witnesses lawyer witnesses including retained expert witnesses to come in and testify to what the law wasn't. You said it was improper for for it was a bad faith tactic or whatever the lingo is for unlaid up for travelers to list the IRS as a payee on the check. Yes I said it was retaliatory. In fact the evidence at trial was that it came out. What's travelers supposed to do. Travelers were there and offer an explanation as to why they did that. They could have offered an explanation of what they thought the law was but it would have been contradicted by what the court told the jury was that they were wrong. And the jury would be able to understand that they did not put them on for two years retaliatory put them on and maintain them in the face of contrary law. Is your argument there's an error of law or was that or is that I don't quite understand your argument. It's an irregularity in the proceeding. That's not going to get you a new trial if there's an irregularity. Was there an error. What's the error of law. The area area of law that wasn't the error of laws of the jury was misled by testifying witnesses that the law was something it wasn't. So they could not properly gauge through the prism of law. Highly prejudicial to have these lawyers come in and testify about this little incident. Extremely prejudicial. Yes it was. Particularly because compared when it was connected to a Casey a standard jury instruction that says only that evidence from those testifying witnesses that wrong law could be considered. Then the argument of counsel could not be finding three months after the jury left would have been something that the jury could have used in deciding whether or not this was appropriate. Yes. You said you had three items you wanted to. Yes. The next would be the media. The mediation evidence. Your Honor. That would be the district courts allowance of double hearsay foundation bearing statements of demands made by the mill houses in a mediation. Let me ask you this. Let's assume for a moment that your legal argument is absolutely correct that it's intertwined. This is substantive not eerie procedural. California has strong law about mediation etc. etc. etc. Where did you preserve this. Where did you object to it. As I read this you met with the judge. Basically gave it up. He didn't bring it up again. It just suddenly appears magically on appeal. Didn't you waive this. No. In fact Your Honor. It can't be impliedly waived under California's statutory law. It has to be waived by a writing signed by you. Wait. You're you're you're talking about different things. You're in trial now like Judge Judge Smith just said you're in trial. Right. Yes I was. OK. And prior to trial there were several. There are a number of in limiting motions and I understandably the district court judge says get rid of these motions. You know it's ridiculous. Thirty five in limiting motions. And he asked counsel to deal with that. One of those motions from both sides is excluding the mediation evidence. And you guys withdraw those motions. Judge Smith said you would draw. Yeah I'd like to. Well there's some discussion about the fact of mediation and you don't object. You say that's fine. I would like to address that as a matter of fact both sides did bring in limiting motions and 27 of the 35 were brought by the defendant. The court refused to hear them denied them all without prejudice. And in the winnowing process as a plaintiff attempted to comply with the court's order and reduced town to one. There was agreement that it would not be in the trial. There was no such agreement. There was. I don't mean to. No, no, no. It's OK. Go ahead. Yes, Your Honor. Prior to trial there was an agreement among counsel that it would not come in. And in fact. How are we supposed to rely on that? You can only rely on the record. I appreciate that, Your Honor. And at the time of the pre-trial hearing on the hours before trial occurred, the court suddenly on its own after both counsel indicated that mediation statements would be privileged decided that under 408 that wasn't the case and developed this due process exception. But Mr. Cannon, I believe I recognize or remember the record on that. And I believe your testimony or your statement before the court was on the issue of bad faith that is relevant. That was what you said to the judge. And then thereafter when it was raised by defense counsel during the trial, your objection was foundation and hearsay. Not, Your Honor, this is mediation. This is an issue that cannot be raised. And the questions that are being asked are well beyond the scope of what the statutory privilege is. Don't you have, didn't you have an obligation to raise it clearly and specifically? Otherwise, and if I take your argument as the way you seem to be presenting it, is that this statute, state statute, whether you raise it or not in trial, always gives you the opportunity, let's assume that as it happened in this case, your client's loss. You can always raise it on appeal because it is so substantive that whether you raised it or not, that you haven't waived it. Doesn't it have to be plain air? I believe that the statute is plain and clear, and I know of no other case that has held that it comes in for this, and I did not make the statement. Let me ask you this. Are you saying, that's assuming, and you didn't do this, but it's assuming that you sat back, you let this evidence come in, strategically perhaps you felt you could deal with it, but your client lost. And so you have an automatic right to raise it on appeal based upon the statute, even though you didn't do anything to preserve it? Yes, I understand what you're saying. I believe that the statute absolutely precludes the introduction of the statements that were objected to on the grounds that remained after a discussion with the district court. I also don't recall saying that it was relevant. Offers made by the millhouses could never be relevant or offered for bad faith on the part of the defendant. They're logically disconnected. The only thing in the bad faith tort is the unreasonable withholding of benefits by the insurer who has an obligation under California law to pay the undisputed amount as soon as it can be determined. There's nothing about a millhouse statement or an insured statement to its first party insurer that precluded it from paying the claim. There were nothing about those statements, those hearsay alleged demands that were offered in the trial that could have been relevant in any sense in this case. Go ahead. I'm sorry, Your Honor. I'm going to have to go with you when you're finished. They weren't offered for that purpose that the district court even opined they could be, which would be to explain or rebut due process. They were offered simply to set up a straw man to impugn the millhouses, and over 300 times it was brought up in an eight-day trial about these alleged extravagant demands. Did you object? I did, Your Honor. Did you object on each and every one of these? I did not, Your Honor. It was futile at that point, and clearly the district court even said in its order denying a new trial that if I had insisted on our privilege, the millhouse's privilege, he would have taken the bad faith impugnative damages claims from the jury. It was clear he was. What he said in the first part of his order was you didn't raise it. You did not raise the mediation privilege objection. And it's clear that I did not raise it, Your Honor, based upon the evening before and based upon what I believe in. Well, in his post-trial ruling, his order, he makes it clear. He says, first, you didn't raise it. You didn't raise it. You effectively raised it by not objecting on this ground. I agree. Then he goes on and says, well, even if you had objected, even if you had objected, I would have, you know, I would have let it in anyway. But that doesn't, that's, you know, he didn't have to go that far. He could have just said you waived it. Done and over. Thank you. I agree, and I appreciated the court's candor with us in the post-trial order because it was consistent with what the understanding was the night before trial on what he was going to allow and the reasons for it. You know, to be honest with you, I know I heard your answer to Judge Smith's question. I would not understand how you can stand there and say you didn't have to object. Because for two reasons. One, I would not know what it was being offered for, even consistent with what the court told us the night before. It was at mediation, right? Yes, Your Honor. They were going to testify. In fact, as Judge Smith noted, the question, you know, statements that occurred at mediation, and you didn't object. You didn't say, Your Honor, I object. That's improper. It's barred by California's mediation confidentiality statute. You didn't tee it up. You just didn't object. That's true. At that time, I did not. During the trial, I did produce the two letters from counsel agreeing that it was private and would not be admissible under the evidence code in California, which the court was aware we were not waiving our right on mediation confidentiality. I was attempting to pursue the trial essentially in accordance with what the court had indicated. I also believed I had asserted proper bases to exclude it based upon the fact that there was no foundation for it and that it was double hearsay. What is your best evidence that you properly raised the use of any mediation testimony in the trial? The best evidence would be the agreement, the testimony of Duncan Parks, travelers' lawyers who admitted it was intended to be confidential by the parties, the two letters exchanged by lawyers agreeing that it would be maintained confidential. My discussion with the court the night before trial asking that it not be mentioned, my objections to it on the grounds I believe were left. I did not assert a mediation privilege because the court had indicated that you believe travelers have due process rights. So are we then, for example, to take what I'll call the confidentiality agreement, are we to parse the confidentiality agreement and determine whether in each instance what came into evidence was a violation of that document? Is that what we're supposed to do? The testimony at trial was all about what they said in mediation. There were no other offers from the Milhouse put forward at trial, Your Honor. Well, let's just say hypothetically that if we read the record as you're basically participating in this, you know, you put your own stuff, well, they said this and we said that and so on, I'm just still struggling with the fact that even though the law is what the law is, that somehow you could do what was done here and yet you still have retained this non-waivered privilege, if you will. Well, what I did was the court indicated that evidence of mediation would come in and I objected on other valid bases which I thought remained. The court indicated that it was going to allow it under 408 to rebut claims of delay. Well, let me ask you a question, though, counsel, on that. Are you sure the colloquy with the court wasn't such that you did, in fact, tell the court that it did have some relevance to, I mean, you went along with the court as I recall that colloquy with the court, you said, well, it seems to me that it might be relevant on the issue of bad faith because the insurance company had asserted that, look it, Your Honor, we engaged in mediation. We tried to resolve this. And I believe your statement to the court was yes, it would have some relevancy there. Then you didn't respond to the court when the court said, you know, this is inconsistent with Federal law under Rule 408. And so, you know, my sense is if you would had made that argument that you're making to us now, perhaps the judge would have gone into a very detailed analytical legal determination as to whether or not it was a privilege, whether or not eerie applied, but you didn't do that. And then at trial, instead of reasserting it, your objection was hearsay foundation, hearsay foundation. So, and then following up on what Judge Smith said, where else in the record did you then pound the table and say, Your Honor, remember this mediation issue and or offer it in evidence or something of that sort until after the hearing? Well, there were, in fact, the court gave me a standing objection because I was objecting so much to the Hectoring examination of Mrs. Milhouse on demands that she could not even recall making. I do not recall saying to the court at any time that the Milhouse's statements in a mediation would be relevant to bad faith. In fact, the only thing relevant that could be relevant to the bad faith cause of action would be lowball offers made by travelers if we had put those in, which we did not because we honored the confidentiality of rent. But under white versus western title, a California Supreme Court case, lowball offers to settle would be admissible against travelers. Nothing the Milhouse's would have to say would be about how they valued a tort claim would be relevant to the bad faith cause of action. So I'm fairly comfortable I did not say that. But we weren't, what counsel, what I was trying to do was trying to point out that, as I did in the record, that the mediator was not on the witness list, was not intended to testify. This was ambush testimony, and the mediator couldn't come and didn't. This was double hearsay that couldn't be cross-examined, and it was offered for a wholly irrelevant and improper purpose. Well, you must have thought about this before the trial because somebody prepared a motion in Lemonade to exclude all mediation evidence, and then you withdrew it. And you had it. I mean, you didn't, and the judge said, you know, you can object during the course of the trial, which is usually what judges do who run trials is they get 30 motions in Lemonade and they tell counsel, look, you can't really decide these motions until you see the evidence, you see how the trial unfolds, and then just raise them again. It didn't happen. You didn't do that. It didn't happen exactly like that, Your Honor. What happened was both sides did move to keep it out. In the case of the trial, there was a dispute. Graphics had been exchanged. This is in the record. Right. And it showed that they were going to attempt to introduce the fact of mediation, and my statement to the court was I would hope that not even that would be a part of this trial. And that's when the court opened up the evidence code, 408, and started reading from it and decided that it could be, even after the other side agreed it wasn't proper. You withdrew your motion in Lemonade to address mediation. You could have said, Your Honor, I'm not going to refile that motion, and I want the court to rule on it. That did not happen. You didn't do that. No. The court made its position clear that the evidence code was going to allow that evidence, and so I objected on the grounds remaining available to me and respect to the court's. You said you had one other basis, one other ground you wanted to address. The other was the testimony of the expert witness, Mr. Holland, who essentially took the demeaning testimony about the mediation statements of the millhouse that he knew nothing of, and the IRS question that he knew nothing of, not even the distinction between levy and lien, and had testified in his expert reports and so forth, he would not opine about taxes, and tied those two theories together for the bow that counsel used on the box of inadmissible evidence to show the millhouses were people who were overreaching, unworthy. You objected to all of that, of course, did you not? I did object to that testimony, and it was overruled. So those would be the three issues, and also the other thing I would say is that with respect to the millhouse's claim for interest under the statute, that the damages were calculable, and that we would contend that they're entitled to interest on the judgment interest and a new trial. And I'll stand down if you have no other questions. Thank you. Thank you. I'll give you a minute for rebuttal. May it please the Court, Peter Abrahams for Appallee and Cross Appellate Travelers Insurance. I'll discuss the issues in the order that counsel discussed them. The first one that he discussed is the IRS issue, and counsel's argument in his opening brief is that he's entitled to a new trial on bad faith because the trial court refused to give his proposed instruction number 46. The problem with counsel's argument is instruction number 46 was an improper statement of the law because the proposed instruction stated that the IRS has a right, before the IRS has a right to receive the property of a taxpayer, it must either prevail in a lien foreclosure suit or serve an administrative levy on the third party in possession of the taxpayer's property. He cites for that proposition the United States versus National Bank of Commerce, but that's not what the National Bank of Commerce case said. What the United States Supreme Court in that case said is that a federal tax lien is not self-executing. Affirmative action by the IRS is required to enforce collection of the unpaid taxes. And then the Internal Revenue Code provides two means, either an administrative levy or a lien foreclosure suit. But all that means is that a person holding property subject to an IRS lien does not have to turn the property over to the IRS until it receives an administrative levy or there's a lien foreclosure suit. That's all that that means by the fact that an IRS lien is not self-executing. It doesn't mean that if I owe money to somebody who has an IRS lien against them that I can disregard the IRS lien and pay the money to that individual. Because if I do, as the four cases which we cited in our brief, United States versus Allen, Bedrock versus United States, United States versus Bank of Salina, and Walker versus United States, it's called very clearly that if you're aware of an IRS lien on somebody and that attaches to the property, money, or whatever that you happen to have, and you pay it to the taxpayer without accounting for the lien, that you're liable to the government for conversion. So the instruction was clearly improper. And so the District Court quite properly refused it. And certainly there was no error in not giving that instruction. Regarding mediation, and there's been a lot of discussion about whether counsel was obligated to object or not, I just note in his brief, he makes a very serious misstatement of the law when he says that the federal rules of evidence are subject to the Rules Enabling Act. That's simply not the case. Unlike the Federal Rules of Civil Procedure, the Rules Enabling Act is deemed an act of Congress. It is not, I mean, excuse me, the Federal Rules of Evidence are deemed an act of Congress and are not subject to the Rules Enabling Act. The only issue under Federal Rule of Evidence 103, which requires that the party to preserve an issue on appeal from the admission or exclusion of evidence must state the specific grounds for the objection. The only issue is whether it's constitutional and Congress clearly has the right under the constitution to specify what a party must do. Counsel, that's all interesting, but probably not terribly helpful to us in this case. I'd be interested in knowing whether you believe that counsel preserved the contrary, did in fact the Milhouse's waive that issue by failing to properly object at the trial level. They clearly waived it by failing to object. The only objection was hearsay, and that can be quickly disposed of because Mrs. Milhouse in her testimony essentially admitted that everything that the traveler's witnesses said about the mediation demands was true. So from your perspective, regardless of how one construes the California law and taking arguendo that this is a substantive rule that we must apply, that we don't need to get to that because it was waived, and so that's the end of the story as far as that part of the case is concerned from your perspective. From my perspective, and I would just point out in terms of the argument, well, we don't have to object. And even if this case were tried in state court, the California Supreme Court in the Foxgate Homeowners Association versus Vermalia case, which is cited in the briefs at page 10, footnote 7, states that even though you cannot impliedly waive mediation confidentiality, that doesn't mean you don't have to object at trial. The California Supreme Court in footnote 7 in that decision said that a subject to evidence regarding what happened at mediation is a waiver. But we don't have that particular case. It's not really this case in the sense that you don't, this is post-trial is what you're saying. And post-trial or during trial, you have to raise it during trial. But the court that you cited or the opinion that you cited said that you can't waive it, but that was pre-trial. Well, there's two types of waiver we're talking about. Because it's true that you cannot waive, impliedly waive the mediation confidentiality under California evidence code section 1119 by filing a lawsuit. In other words, if you. Right, I understand that. But I guess I'm following up with what you're saying is distinguishing the case and there isn't a case on point like this one. Well, I think the Foxgate case from the California Supreme Court makes clear that, and California, as I say, the California Supreme Court said you can't have an implied waiver by litigation conduct. In other words, the fact that you sue your lawyer, you waive the attorney-client privilege, but you don't waive a mediation confidentiality. But that's a whole different, that's, counsel is conflating two kinds of waivers because that doesn't mean you don't have to object if the evidence comes in. Because I think as your Honor pointed out, if counsel is correct, you'd have a rather absurd result that you can let the evidence come in without objection, see how the trial comes out. And if you don't like the result, then you go up and appeal and say I didn't get a fair trial because evidence regarding what happened at mediation came in. And that's clearly an absurd result. That's why you have to object at trial. So counsel said up there, when he was up there just a minute ago, he said it would have been futile to raise this objection. And he, after the pretrial conference the day before trial started. Well, there's nothing that was said. Because the judge said, the judge said, and then this rule seems to suggest even statements made and offers which made, offers made which are inadmissible can be admissible if to rebut a claim of undue delay. Well, it's interesting. Isn't that what he's saying? Well, that just meant the judge was going to let it in. Well, no. No need to object. Well, if you look at Judge Carney's post-trial ruling, he makes clear that all he was doing was musing. In other words, the issue that was presented by counsel for travelers as we feel we're entitled to tell the jury that we, that we offered to go to mediation. What was, you know, at the time counsel said what happened at mediation, you know, right now I think that's not admissible. And then Judge Carney mused. He says, well, wait a minute. Under federal rule of evidence 408, maybe more comes in, but he was just musing. He never, there was never any ruling. And certainly counsel for plaintiff, if he felt that this was an admissible, if the applicable rule was California evidence code section 1119, it was counsel's obligation to stand up and say, wait a minute, your honor. I think you're confused. We're not talking about the federal rules of evidence here. The applicable rule is California evidence code section 1119. That was never said. And, you know, at the time I looked, you know, counsel has said, well, the objection was futile. I'm not aware of any case. We've looked very hard for a case that says that you can argue futility based on what happened after trial. There was certainly nothing that Judge Carney said during the pretrial hearing that would give any indication that he was not. We do have case law that says that before trial, when the judge makes a ruling on an eliminating motion, it makes it clear that you don't need to continually object. That's correct. Grounds during the course of trial. Certainly that's the case, but that's not what happened here. In fact, Judge Carney never, as your honor pointed out, Judge Carney said, I got 35 motions and limiting rulings here. I can't deal with all of them, you know, window them out and I'll rule on the ones that you can agree on. And the motions and limiting regarding mediation confidentiality were withdrawn and never submitted. But what about the, the distinguishing feature that counsel's making between the mediation, the judge said the mediation may well be admissible, but his position was, and he was clear, or tried to make clear that the communications during the mediation were not admissible. Was that something that the court ruled on? No, the court did not rule on that. As I say, well, all you had was a list of colloquy and musing. And Judge Carney was looking at rule 408 and say, well, wait a minute. There's rule 408 and nobody ever suggested to him that, well, wait a minute. You should be looking at California evidence code section 1119. I would just point out, perhaps it's not necessary for me to go into this, but I think that under the Cassell case and the Reneker case, the California decisions, I think notwithstanding mediation confidentiality, there is a due process exception. And in this case, based upon counsel's whole theme of the case, starting at doing the opening statement and continuing through the questioning of travelers' witnesses, he made it very clear that his position was that travelers, from the beginning of the case, took a very unreasonable, hard-nosed, unreasonable interpretation of what it owed under the policy, and it continued doing that through the mediation. In fact, he started out by telling the jury, my clients have never asked travelers for any more than what they're entitled to under the policy, no, ever. We know now that was a misrepresentation. If travelers was not allowed as a defendant to introduce evidence to rebut that, the statement would have been unrebutted, and certainly as a matter of due process, it's true. We don't need to explore due process. Okay, that's fine. Thank you. Then I won't explore it. Can I just ask you one other question? Yes. Let's assume for a moment that you get past the waiver issue. Does the plaintiff also have to show that it was prejudiced? Yes. And if so, in what way was that manifested in this record? It wasn't manifested. In fact, both Federal Rule of Evidence 103 and California Evidence Code Section 1128, which deals specifically with admission of statements during mediation, state that a party's substantial rights have to be affected before. If there's error, then you presume prejudice in a civil case in federal court, and the other side has to show that there was prejudice. Well, but it clearly, clearly, I think the record is, you know, crystal clear that there was no prejudice, because this is not a case where the jury heard about damaging admissions during the mediation. I can understand why public policy would say that a party's entitled to, you know, spill their guts at mediation and say all kinds of things. But it certainly didn't come as a surprise to the jury that plaintiffs were contending that travelers did all kinds of bad things, and therefore plaintiffs were entitled to millions of dollars in bad faith damages. So, you know. Well, you know, from my perspective, when I read the parts of the transcript about this mediation and looked at the exchanges that took place, the questioning, the cross-examination or examination of Mrs. Milhouse when she was on the stand in Mr. Milhouse. Yes. I mean, I think the very, the reason why we have the confidentiality privilege in state court and in federal court to some extent is the very, you know, you just read that transcript and you say this never should have come in. This just went way too far. The fact of mediation may have been relevant because they wanted to show that they were engaging in ways of settling the case. But the extent of what took place there, it well justifies the whole basis for California's mediation privilege. You know, when you go to, I don't know how many settlement conferences I presided at when I was a district court judge and a state court judge, and people come in with wild estimates for their settlement position. That happens all the time. But in this case. And the purpose of that mediation is to sit down and to discuss the case and to see if you can work it out. And the fact that people took extreme positions one way or another in the mediation really doesn't seem to have, in my book, well justifies the whole mediation confidentiality, public policy provision that the California legislature adopted. Well, if counsel for plaintiff had not broached the subject by going beyond the fact that there was a mediation and effectively telling the jury that it was traveler's fault that the mediation failed, not his client's, because all his clients were ever asking for was their policy benefits, but travelers was taking the hard-nosed position. I mean, in his opening statement, after telling the jury that my clients have never asked for more than what they're entitled to under the policy at no time ever, then he tells the jury, in June of 2010, travelers was put on notice by the millhouse's lawyer, it's time to pay the claim. You will find that that was met with resistance and an insistence on using an improper system. So the millhouse's met with travelers, tried mediation, that failed. They sued travelers. The clear message was that travelers supposed resistance and insistence on using an improper system is what had caused the mediation to fail. It's just argument. Well, it's argument. Never his opening statement. But it certainly opened the door. You could have said, you know, no argument, Judge. He's arguing. He's just supposed to lay out what the evidence is going to show. Well, but the fact is that counsel opened the door and travelers was entitled to step through it. But in any event, I agree with Judge Smith. There was no prejudice here because all the jury heard is what plaintiff's position at trial was, namely travelers was a terrible company and plaintiffs were entitled to millions of dollars in damages. So how plaintiffs can argue that that evidence prejudiced them when they asked for over 17 million to the jury? I mean, the jury would only draw a negative inference if they concluded that travelers did not commit bad faith. But that was dependent on the evidence, not, you know, not what the party demanded at mediation. Just going to Mr. Holland's testimony, the expert witness, the district court had broad discretion to determine whether an expert has sufficient qualifications to give an opinion. Here we have Mr. Holland, who has spent 35 years litigating and handling property damage claims. And I think over the course of his experience, he clearly is able to develop a very strong impression of which way a case is going, whether it's going towards settlement or whether the plaintiffs are really trying to set up a bad faith case. And he offered his opinion, and the district court was certainly within its discretion in allowing that testimony. Just going to the final point that counsel discussed about prejudgment interest, California Civil Code Section 3287 permits prejudgment interest only where damages are certain or capable. Wasn't there an amount that travelers agreed was due in owing? Well, and it paid that. It agreed that, well, its first estimate based upon replacement cost was from the Associated Construction Services was $692,000. Actually, it was about $827,000 when you add the pertinent structures and shrubs and trees. Then after plaintiff requested that the payment be based on the comparative sales analysis, even though that's not what the policy provides. Would that have gotten them more money? Well, they paid $830,000, travelers, simply for the dwelling, which was certainly more than the Associated Construction estimate. But I think, you know, to say that... It seems like travelers agreed that what was due, I mean, from the minimum amount that was due, was $680,000. Did they actually pay that? They paid $830,000. No, did they pay that before trial? Before trial, yes. It was paid in, I think, November of 2010, and the trial was in August of 2013. So there was, I mean, there was a dispute about this check payable to the IRS. But as I explained, I think that travelers quite properly named the IRS as a payee to avoid being sued by the IRS for conversion. But well before trial, travelers paid the money. And keep in mind, I think, first of all, that there were, in this case, I mean, the cases cited by plaintiff are all cases where the defendant essentially agreed with the plaintiff's calculation. In this case, there were three different estimates of what it would cost to rebuild the plaintiff's home. In fact, there was the Canfield estimate, which was $922,000, but plaintiffs conveniently didn't tell travelers that they had gotten an earlier estimate from Mr. Hatch for $518,000. And then the associated construction came up with an estimate of, including everything, $827,000. So to say the damages were certain or capable of being made certain when you have three different estimates simply makes no sense. Keep in mind also that of the million dollars in damages, the remitted amount awarded by the district court, only $291,000 of that is the replacement cost. And the balance of that, you know, there's an award of $257,000 for personal property. Plaintiffs didn't submit an inventory for that until three and a half years after trial. How much does the insurance company concede was, in effect, a liquidated amount due under the policy before the trial began? Well, I mean, if you take out our position is that I could do the math here, but it believes that there were three items. There was a million dollars. That was the face amount of the policy, right? Well, the face amount of the policy was $756,000. Oh, I see. This was escalated in parts and all that sort of thing. Yeah, but, you know, in our cross-appeal, and I really don't have time to address it. That's okay. But we contend that three items that Judge Carney felt were supported by the evidence, the additional living costs beyond the amount covered by the policy, the personal property, which the inventory that travelers received was totally meaningless because it gave no dates or ages for any of the property, and the code and ordinance upgrade, which policy required had to be incurred. That means plaintiffs had to sign a contract, which was never signed by the plaintiffs. That was, you know, there was no evidence that they had signed a contract. So those three items, we contend, should not be part of the judgment, and the judgment should be reduced. So can you answer Judge Smith's question on the amount? The amount? Well, it's, I think, you know, I've given the figures in our brief. I don't have the numbers right in front of me. Well, his question, though, was very precise, which was the amount, the liquidated amount that farmers, that travelers agreed. I wouldn't say there was a liquidated amount. Well, I mean, maybe that's overstating it, but, you know. It's not a liquidated amount. It's what travelers concluded their best estimate based upon their own construction consultant, is that it would cost, including the pertinent structures and trees and shrubs, it would cost about $830,000 to rebuild everything. And how much of that money was part of the judgment that was actually awarded? Well, the judgment felt that, you know, the judge concluded that the jury could have found that plaintiffs were entitled to more. In other words, the court found that the jury could have found that, notwithstanding travelers' $830,000 payment, that there was still $291,000 left. That was a jury determination. You know, we're not challenging that. But there was a difference of opinion, and the jury came to the conclusion that travelers' estimate was low, but that was based upon conflicting testimony. And so that's what we're left with. Thank you. All right. May I, Your Honor? One minute. I can answer the question on that. The amount they came up with in a four-day appraisal done by their insurance expert was $1,005,000 for replacement cost of the property at the time. $1,005,000? $1,005,000 at the time of the mediation, which they didn't share then but shared after it in November, two years after the fire. At trial, both sides put on evidence of the replacement cost and actual cash value, which exceeded the policy limits. The policy limits were what were requested. With respect to the issue of prejudice, clearly the prejudice that you were asking about, whether or not they were prejudiced, it was the tying of these demands that they say and the district court said the jury had to hear in order to defend themselves from bad faith. They tied those through Mr. Holland, who knew nothing about them, to demean the millhouses and treat them as text. Excuse me, counsel. You're speaking like this is a law school exercise. I'm sorry. You're asking for specific evidence in the record that you believe proves prejudice. What was offered to show prejudice on the record? The questioning about them being immoral for the amount of money they requested. I understand your position that that is prejudicial. I'm asking what did you put on the record to show prejudice? My objection that it was overruled. Okay. And then with respect to the talk about Mr. Hatch, Mr. Hatch, the evidence is he wasn't a contractor. There was no $500,000 amount. And with respect to the payments that were made, the only payments made prior to the November period two years later was $602,000, which stale dated. Finally, with respect to the personal property claim, we believe the court properly dealt with that through the abuse of discretion standard and ample evidence was provided for both the additional living expenses on the special contract instruction and the definition of incurred, which was decided by the jury and the court. Thank you, counsel. The matter is submitted. We appreciate your arguments. The panel is going to take a short break. Okay.
judges: Paez, M. Smith, Silver